1  RAJ V. ABHYANKER, California SBN 233284
2  Email: raj@legalforcelaw.com
   WENSHENG MA, California SBN 299961
3  Email: vincent@legalforcelaw.com

4  LEGALFORCE RAPC WORLDWIDE, P.C.
5  1580 W. El Camino Real, Suite 10
   Mountain View, CA 94040
6  Telephone:    (650) 965-8731
   Facsimile:     (650) 989-2131
7
8  Attorneys for Plaintiff,
   LegalForce RAPC Worldwide, P.C.
9

10
11              UNITED STATES DISTRICT COURT
12            NORTHERN DISTRICT OF CALIFORNIA
               SAN FRANCISCO DIVISION
13

14  LEGALFORCE RAPC WORLDWIDE, P.C.     Case No.: 3:19-cv-05935-MMC
15
         Plaintiff,                     **COMPLAINT FOR:**
16
17       v.                             1.  DECLARATORY JUDGMENT ACT,
                                            DECLARATORY AND INJUNCTIVE
18  UNITED STATES PATENT &                  RELIEF FOR VIOLATION OF THE
    TRADEMARK OFFICE,                       FREEDOM OF INFORMATION ACT, 5
19                                          U.S.C. § 552 et. seq.
20       Defendant.
                                        **BENCH TRIAL REQUESTED**
21
22
23
24
25
26
27
28

## NATURE OF ACTION

1. This action seeks to enhance public understanding of an urgent concern: favoritism in ethics enforcement against current and former U.S. federal government employees and retaliation against political opponents by the Office of Enrollment and Discipline ("OED") of the United States Patent & Trademark Office ("USPTO", or "Defendant").

2. The contemporary importance of this issue is no accident. Throughout the 2016 presidential campaign, then-candidate Donald J. Trump ("The President" or "Trump") asserted that he would "*drain the swamp*" in describing his plan to expose the corruption, ethics violations and favoritism by insiders in the federal government. The President has made a mockery of a promise at the core of his campaign. Donald Trump has assembled the most unqualified and corrupt cabinet in modern American history. His administration's unabashed and unchecked cronyism has created a government of officials with no experience in the offices they oversee. A total of thirty-four individuals and three companies were indicted by Mueller's investigators. Eight have pleaded guilty to or been convicted of felonies, including five Trump associates and campaign officials.

3. "Over the past two days alone, President Trump has drained most of the remaining mystery from the world's least mysterious crime drama. In a series of comments to the media, the president casually revealed that yes, he had pressured Ukraine's president to investigate Joe Biden, and yes, he had tied that demand to military aid."[1] (**Exhibit 15**). At the same time, Trump's own children Ivanka Trump and Donald Trump Jr. have aggressively used their leverage to get favored status in registration of the TRUMP brand trademarks and related copyrights all over the world and thereby continue to profit from his presidency at the expense

---

[1] See *Trump Blurts Out to Reporters That He Pressured Ukraine to Smear Biden,* on New York Magazine, today September 23, 2019.
http://nymag.com/intelligencer/2019/09/trump-demanded-ukraine-smear-biden.html

of his political opponents.[2]   In fact, China recently granted 16 trademarks to defunct Ivanka Trump businesses[3] right in the middle of a trade war disfavoring China (**Exhibit 18**).

4. Moreover, Trump has abused his position of power to discredit and ridicule his opponents as well as applicants for U.S. trademarks before the USPTO on the basis of race, national origin[4] , started federal investigations against them, and threatened criminal prosecution (including against the son of political rival Joe Biden in the past week) in an effort to distract from ethical violations inside the Executive Branch of the federal government. Major trademark industry trade publications have taken note.[5] In addition, Trump also used his pardon power and other inducements to strongarm federal government employees against him to stay quiet.

5. Trump's actions have resulted in a culture of favoritism and retaliation of political opponents across all levels of the Executive Branch of the federal government of the United States of America, including at the USPTO. Specifically, LegalForce RAPC Worldwide P.C. ("RAPC") alleges that the USPTO has unequally favored federal government employees working at the USPTO with respect to systematic violations of its own signature rules (including 37 C.F.R. §11.18) that documents must be personally signed by the named signatory

---

[2] See *The Lead with Jake Tapper,* on CNN, aired today September 23, 2019.

[3] See article *China grants 16 trademarks to defunct Ivanka Trump business,* on CNN, November 6, 2018. https://www.cnn.com/2018/11/06/politics/ivanka-trump-trademarks/index.html

[4] Details about the changes can be found in the USPTO's Examination Guide 4-19 Dated September 2019. See: Ex. 14, which are new instructions related to the rule regarding foreign trademark applicants requiring a US licensed attorney. In section 3, the guide states: "Foreign citizens must comply with US visa immigration laws to claim the US as their permanent legal residence. When the applicant or registrant is a foreign citizen/entity with a US street address, it is necessary to determine whether the US street address is the applicant's or registrant's domicile."

[5] The new instructions – and especially the use of the term "permanent legal residence" – have raised alarm bells for examining attorneys, according to WGBH News. "Trademark examiners are now required to ask questions about the immigration status of applicants living in the US that have never been asked of applicants before," one examiner told the Boston-based outlet. "Any immigrant who does not have a green card will likely be unable to obtain a trademark registration, even if they hire an attorney in compliance with the new rule requiring US counsel." See **Exhibit 13**, Article, World Trademark Review titled "*Shaky legal ground" – the unintended consequences of USPTO requests for proof of legal residence.*", August 28, 2019. https://www.worldtrademarkreview.com/brand-management/shaky-legal-ground-unintended-consequences-uspto-requests-proof-legal

by failing to investigate, excusing, or attempting to cover up alleged signature rule violations of its own employees and executives by persons other than the named signatory by excusing, taking no action, or even empowering an employee against whom an internal grievance was filed with respect to discrimination on the basis of race and national origin.[6]

6.   In addition, the USPTO now under the Trump administration asks for "proof of legal residence in the US" from some trademark applicants and is itself "facing a backlash" from its own staff due to new instructions promoted by the Trump administration. (See **Exhibit 13**). Moreover, the Trump administration is unequally applying its own form of pseudo "pardon" power to unfairly favor its own USPTO employees against whom alleged violations of the rules have been raised while retaliating against RAPC and other attorneys for **:**

a.   RAPC's vocal opposition to USPTO rules discriminating against foreign nationals, particularly applicants from China[7] prior to its adoption by the Trump administration (**Exhibit 16, Exhibit 17**).[8]

b.   RAPC's use of the federal court system to expose the unequal application of USPTO rules through federal litigation (3:17-cv-07194-MMC, AAA 01-18-0001-5162).

c.   RAPC's maintenance an office to support its U.S. licensed attorneys in the nation of India; and

d.   RAPC's founder and shareholder Raj Abhyanker's extensive financial support of former President Barack Obama.

7.   Particularly distressing is the USPTO's complete disregard of attorney/client privilege rules and targeting RAPC employees on the basis of perceived national origin.  Specifically, the USPTO investigated, *sua sponte*, U.S. licensed attorneys employed by RAPC starting with those having a South-Indian sounding last names by directly contacting their clients in the

---

[6] Redacted details partially in **Exhibit 12.**
[7] See **Exhibit 16**, Article, *"LegalForce founder takes aim at USPTO as attorneys come out in support of proposed change to representation rules"*, March 14, 2019.
https://www.worldtrademarkreview.com/brand-management/shaky-legal-ground-unintended-consequences-uspto-requests-proof-legal
[8] See Abhyanker Public comment,
https://www.uspto.gov/sites/default/files/documents/USLicensedAtty_Comment_Abhyanker.pdf , and reprinted as **Exhibit 17**.

1    United States (without any concern to attorney/client privilege) asking if they had ever been to

2    the nation of India and directly communicating with dozens of RAPC clients without any regard

3    to attorney client privilege, and sharing notes of those unlawful conversations with third parties

4    in a ALJ proceeding D2019-42 now pending before HUD without *any* protective order or *any*

5    designation of confidentiality. See **Exhibit 12.**

6       8.   More troublingly, RAPC alleges that USPTO senior leadership at OED[9] has attempted to

7    discredit its challengers by **(1)** creating a hostile work environment leading to a resignation of a

8    former OED employee after a grievance based on racial discrimination and unequal application

9    of rules was filed **(2)** overburdening challengers with new ethics investigations requesting

10   overbroad and burdensome Requests for Information (RFI) expressly asking patent and

11   trademark attorneys ("Practitioners") to waive attorney/client privileges with ethics counsel, **(3)**

12   filing Complaints with Administrative Law Judges seeking to exclude Practitioners including at

13   a half a dozen against current and former Practitioners of RAPC, and **(4)** reassigning an

14   investigator who does not agree with OED and USPTO's leadership's policies of selective

15   enforcement of its rules including investigator Thomas McBride.[10]

16      9.   Plaintiff endeavors to enhance the public's understanding of favoritism in ethics

17   enforcement against current and former examining attorneys and retaliation against members of

18   disfavored groups. In furtherance of its mission, on May 22, 2019, Plaintiff submitted four

19   specific and narrow requests pursuant to the Freedom of Information Act, 5 U.S.C. § 552 et

20   seq., as amended ("FOIA"), to the USPTO.

21   _____

22   [9] RAPC alleges that the USPTO has failed to investigate, ignored, failed to take adverse
     employment action and/or failed to prosecute potential signature rule violations of its own
23   senior leadership (including OED Director Will Covey and USPTO Director Andrei Iancu while
     in private practice and at the USPTO including having other employees, attorneys, and
24   assistants sign official USPTO documents bearing their personal signature), management, and
     examining attorneys ranks including but not limited to USPTO trademark examining attorneys
25   John Salcido, Udeme Uwan and Heather Sapp while employed in private practice.
26   [10] Plaintiff alleges that the USPTO has sought to discredit challengers to their unequal policies,
     and that challengers including the largest online trademark filing websites in the United States,
27   LegalZoom, Trademark Engine, LegalForce, Inc., MyCorporation Business Services, Inc. and
     law firms and attorneys that assist them to ensure higher quality filings including attorneys at
28   RAPC, Dunlap Bennett & Ludwig PLLC, Travis Crabtree, Deborah Sweeney, and numerous
     others.

10.  The requests seek disclosure of all records and records from investigations pertaining to and leading up to the final order of former USPTO veteran Trademark Examining Attorney and Training and Communications Manager of RAPC, Ms. Heather A. Sapp ("Sapp"), by the USPTO. Plaintiff is concerned that in recent months, either as a result of this FOIA request, or Plaintiff RAPC's initial litigation against the Defendant or otherwise, Defendant has been targeting individuals based on their actual or perceived religion, ethnicity, race, national origin, and/or other group identity (e.g., online trademark filers and Practitioners supporting them) for discriminatory treatment with respect to enforcement of signature rules with respect to the signature rules of trademark documents filed before the USPTO. Plaintiff also sought expedited processing and waiver of fees on multiple grounds.

11. Despite the intense and justified public scrutiny surrounding these issues, Defendant failed to timely respond to Plaintiff's requests. Instead, over 60 days after Plaintiff submitted their FOIA requests, Defendant has failed to disclose a single substantive record. Plaintiff accordingly brings this action pursuant to FOIA for declaratory and injunctive relief, seeking to compel the disclosure and release of urgently needed records that Defendant has improperly withheld from public scrutiny.

## JURISDICTION AND VENUE

12.  This Court has jurisdiction over this matter pursuant to the FOIA, 5 U.S.C. §552(a)(4)(B), 28 U.S.C. § 1331, and 28 U.S.C. § 1391(e) since Heather Sapp was an employee of the USPTO.

13. Venue properly lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a)(2), as RAPC's principal place of business is in this state.

14. FOIA provides that this Court may issue a declaratory judgment, provide injunctive relief from withholding records and to order production of such records, and grant other equitable relief as the Court may deem just and proper. 5 U.S.C. § 552(a)(4)(B); *Payne Enterprises, Inc. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) ("The FOIA imposes no limits on courts' equitable powers in enforcing its terms.") (*citing Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1, 19-20 (1974) ("With the express vesting of

equitable jurisdiction in the district court by § 552(a), there is little to suggest, despite the Act's primary purpose, that Congress sought to limit the inherent powers of an equity court.")).

15. This Court has jurisdiction to hear this claim, as Plaintiff has exhausted its administrative remedies through the USPTO's failure to respond within 20 working days (or 30 working days if the ten day extension was properly invoked) as required by law. 5 U.S.C.§ 552(a)(6)(A)(i). Under FOIA, requesters "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions . . . ." 5 U.S.C. § 552(a)(6)(C)(i).

16. This Court may award attorney fees and litigation costs pursuant to 5 U.S.C. § 552(a)(4)(E).

## PARTIES

**Plaintiff**

17. RAPC is a law firm with a principal place of business at 1580 West El Camino Real, Mountain View California 94040 in Santa Clara County, with a law office at 446 E. Southern Road, Tempe Arizona 85282.  RAPC is the largest filing law firm of U.S. trademarks in the history of the United States by unit volume per year, and is the largest law firm contributor to the U.S. Treasury for trademarks filed before the USPTO for at least the last seven years consecutively.  RAPC's mission is to enhance access to legal services to first time entrepreneurs and small businesses seeking to protect their intellectual property at an affordable price. Since its formation in 2008, RAPC has served over 70,000 small businesses across America providing them low cost, fixed fee access to licensed attorneys that otherwise would be unattainable to them through the utilization of technology, globalization, and physical and online access to law centers.

**Defendant**

18.  The USPTO is a branch of the United States Department of Commerce ("DOC") with a stated mission to foster innovation, competitiveness and economic growth, domestically and abroad by delivering high quality and timely examination of patent and trademark applications, guiding domestic and international intellectual property policy, and delivering intellectual

property information and education worldwide, with a highly-skilled, diverse workforce. The USPTO's principal place of business located at 600 Dulany Street, Alexandria, VA 22314 with a Silicon Valley office located at 26 South 4th Street, San Jose, CA 95112. The USPTO is an agency within the meaning of 5 U.S.C. § 552(f), and is in possession of, and exerts control over, records responsive to Plaintiff's FOIA request to it.

19. The Office of Enrollment and Discipline (OED) is responsible for registering attorneys and agents to practice before the USPTO and for developing and administering the registration examination. Additionally, the OED investigates allegations of misconduct by practitioners. OED is a department within the USPTO within the meaning of 5 U.S.C. § 552(f), and is in possession of, and exerts control over, records responsive to Plaintiff's FOIA request to it.

## STATEMENT OF FACTS

**Summary: RAPC's Prior Lawsuits against USPTO**

20. RAPC filed two separate lawsuits in federal court against the USPTO in December 2017 (both lawsuits still pending final order prior to appeal). In both, RAPC alleged its constitutional right under equal protection was violated by the USPTO because the USPTO intentionally treats Plaintiff and other lawyer-practitioners differently than nonlawyer-practitioners for no legitimate governmental purposes. The pleadings explained USPTO has general statutory power under 35 U.S.C. § 2(a) to grant and issue U.S. trademarks, as well as specific statutory power under 35 U.S.C. § 2(b)(2)(D) to regulate the conduct of lawyers and nonlawyers practicing before the USPTO. It also has statutory power under 35 U.S.C. § 32 to suspend or exclude any persons who do not comply with the regulations promulgated by the USPTO.

21. The pleading further explained, although fully empowered by congressional authorities to regulate the conduct of all trademark practitioners, which include both lawyers and nonlawyers, the USPTO only selectively enforces the regulations to its full extent upon lawyer-practitioners, but less so, or in most cases—no regulations at all—upon nonlawyer-practitioners. Lawyer-practitioners and nonlawyer-practitioners are treated differently by the USPTO despite the fact that they are similarly situated—that they both provide trademark filing service before the USPTO, and nothing more. RAPC alleged that the

USPTO knows that the nonlawyer-practitioners have been openly violating the laws and regulations and have harmed the public interest as a result. RAPC also alleged also knows that there are seven other related cases in this Court alleging facts of serious unlawful conduct committed by certain nonlawyer-practitioners. Nonetheless, RAPC alleged that the USPTO has turned a blind eye to these factual allegations but in turn argues in this Court that it is not even in the position to regulate unlawful conduct committed before it. RAPC argued that the USPTO seems to give deference to nonlawyer-practitioners in the United States, whose fees paid to the USPTO help to support a significant percentage of its operating budget of a self funded agency of the federal government. RAPC alleged that such intentional and purposeful disparate treatment between trademark practitioners who are lawyers and those who are not can only be done with a discriminatory motive. The two litigations covering these issues are summarized below.

**A.   RAPC v. USPTO & LegalZoom**

22. RAPC initiated their case against LegalZoom.com, Inc. ("LegalZoom"), the United States Patent and Trademark Office ("USPTO"), and multiple state bar defendants on December 19, 2017 (Case # 3:17-cv-07194-MMC, stayed pending arbitration). Two weeks later on January 2, 2018, RAPC made minor changes to the complaint and filed its first amended complaint ("FAC").

23. RAPC filed a motion for leave to file a second amended complaint on March 21, 2018 ("SAC"). USPTO then filed a motion to dismiss all claims in the FAC against USPTO and to dismiss USPTO as a defendant. The district court granted the USPTO's motion to dismiss all claims in the FAC against the USPTO on April 30, 2011. That same day, the district court also issued an Order denying RAPC's motion to file the SAC, ruling that all amended claims against the USPTO were futile because they would be subject to dismissal. The district court allowed RAPC to amend any claims asserted in the FAC against LegalZoom to cure deficiencies, but prohibited any new claims against the USPTO.

24. The denial of RAPC's motion for leave to file a SAC in the Order was a denial of injunctive relief against the United States government, the USPTO. RAPC were never able to

1  fully plead their claims against the USPTO. Rather than allow RAPC to better articulate their

2  claims for injunctive relief from equal protection clause and due process violations, the district

3  court denied RAPC's leave to amend any of their claims against the USPTO when it issued the

4  Order denying the motion for leave to file the SAC, with the more specifically pleaded claims

5  against USPTO.

6  25. On May 2, 2018 RAPC filed a notice of appeal of the Order, citing appellate jurisdiction

7  under 28 U.S.C. § 1292(a)(1) as a denial of an injunction and under the collateral order doctrine.

8  The United States Court of Appeals for the Ninth Circuit issued an order on May 24, 2018 for

9  RAPC to show cause why the appeal should not be dismissed for lack of jurisdiction, stating

10  that the Order did not appear to be either a final judgment or an order within the collateral order

11  doctrine. On September 17, 2018, having reviewed the response to the court's order to show

12  cause, United States Court of Appeals for the Ninth Circuit concluded that it lacked jurisdiction

13  over this appeal because the April 30, 2018 district court order is not appealable as an order

14  denying an injunction or as an order that comes within the collateral order doctrine. RAPC will

15  refile its appeal after final ruling in this litigation as well as the arbitration.

16  **B. RAPC v. USPTO & TTC Business Solutions**

17  26. RAPC initiated their case against USPTO, Matthew Swyers, an attorney excluded from

18  practice by the USPTO and a former USPTO trademark examining attorney, and three entities

19  affiliated with Swyers, defendants TTC Business Solutions, LLC ("TTC"), The Trademark

20  Company, LLC ("Trademark LLC") and The Trademark Company, PLLC's ("Trademark

21  PLLC") (collectively, "Trademark Defendants") on December 27, 2017 (Case #

22  3:17-cv-07318-MMC).

23  27.  RAPC's FAC pled three claims against the USPTO: (1) a claim that the USPTO has

24  deprived LegalForce RAPC of substantive due process (Fifth Claim); (2) a claim that the

25  USPTO has deprived LegalForce RAPC of equal protection (Sixth Claim); and (3) a claim for

26  declaratory relief (First Claim). In its motion to dismiss, the USPTO argued that this Court

27  previously adjudicated these same claims against the USPTO in the LegalZoom case, and thus

28  RAPC's claims are barred by *res judicata*. The USPTO argued that even if RAPC's claims not

1    barred by *res judicata*, RAPC failed to allege any facts sufficient to support their claims of

2    substantive due process or equal protection violation, and that RAPC has not alleged facts

3    sufficient to show the existence of an actual case or controversy between them and the USPTO

4    that would give rise to their claim for declaratory relief. Accordingly, the USPTO argued that

5    this Court should dismiss all claims in the FAC against the USPTO based on *res judicata* and,

6    in the alternative, for failure to state a claim. Furthermore, because amendment of these claims

7    would be futile, the USPTO argued dismissal should be without leave to amend. The Court

8    granted the Trademark Defendants motion to dismiss on July 17, 2019. For the sake of judicial

9    economy, RAPC decided to not include the USPTO as a defendant when it filed a SAC on July

10   24, 2018 as RAPC's claims principally against the USPTO were already being litigated in the

11   LegalZoom case on appeal.

12   **The USPTO's retaliation against RAPC**

13   28. On March 29, 2018, just months after filing its two lawsuits against the USPTO,

14   RAPC's then training and communication manager Heather A. Sapp ("Sapp") self-reported

15   potential violations of USPTO signature rules by a client of RAPC who entered the personal

16   name of a former attorney John Salcido ("Salcido") on a trademark application in violation of

17   37 C.F.R. §11.18 to the OED. Sapp was a former USPTO trademark examining attorney with

18   over a decade of experience at the USPTO prior to working at RAPC between September 2016

19   and February 2019. Coincidentally, Salcido was a former RAPC trademark attorney who

20   worked at the firm from 2011-2016 before being hired by the USPTO as a trademark examining

21   attorney on or about February 2019.

22   29. In the months following, without even a formal client complaint, the USPTO began an

23   investigation, *sua sponte*, of both Sapp and Salcido's own conduct with respect to signature

24   rules while employed at RAPC, along with investigations of at least a dozen attorneys current

25   and former attorneys of RAPC. Specifically, by June 21, 2018, an investigation in File No.

26   G3389 against Salcido requested an "in-person interview" while making the allegation

27   "*Numerous other trademark applications on which you were identified as the attorney of record*

28   *between 2010 and 2016 also appear to have electronic signature improprieties with respect to*

*your purported signature, the purported signature of the applicant, and the purported signature of trademark attorneys with whom you worked at the law firm where you were employed at the time such trademark documents were prepared, signed, and filed with the Office.*"

30. Between June 2018 and July 2019, approximately thirty (30) Requests for Information (RFIs) have been sent to about a dozen RAPC attorneys by OED accusing them of possible violations of USPTO rules of professional conduct having a total of hundreds of questions requiring individual responses within short time windows. Some RAPC attorneys have been asked to waive privilege with counsel. In addition, USPTO has personally mailed and corresponded with dozens of RAPC clients *sua sponte* by sending them letters asking for voluntary waive privilege with RAPC without seeking consent from them or RAPC prior to sending the letter.

31. New investigations were opened by the OED against both Sapp and Salcido, as well as about a dozen RAPC attorneys. However, no charges were filed against Salcido (a current trademark examining attorney at the USPTO), Udeme Uwan ("Uwan") another former RAPC attorney during the relevant time period who worked at RAPC, formal ethics charges were filed against at least six (6) different RAP attorneys including Sapp. While Sapp was offered a probation without any suspension in a settlement, at least five (5) RAPC attorneys including DOE 1 who were trained under the direction of Sapp have had formal disciplinary complaints filed against before an Administrative Law Judge (ALJ) seeking permanent exclusion from practice before the USPTO. The USPTO's aggressive conduct toward RAPC has thrown the firm into financial and management turmoil.

**RAPC's FOIA Request**

32. On Wednesday, May 22, 2019, RAPC filed a Freedom of Information Act ("FOIA") request with the OED with respect to Sapp in part to determine why Sapp was offered special treatment not offered to DOE 1 or other RAPC attorneys in view of demonstrably false statements made by Sapp in the Final Order Proceeding No. D2019-31. The requests were narrowly tailored specifically requesting communications leading up to the settlement with Sapp by OED (**Exhibit 1**). The very next day, on Thursday May 23, 2019, the USPTO provided

an acknowledgement letter to RAPC via email making it clear that the FOIA has received by the USPTO on May 22, 2019 and had assigned a reference number FOIA Request No. F-19-00197 (**Exhibit 2**).

33. A week later, on May 29, 2019, the USPTO sent a letter stating that "Preliminary estimates indicate that the approximate processing cost for this FOIA request is **$ 3017.28**. This estimate includes estimated search time of approximately 26 hours (various GS level employees and 1 SL) and estimated review time of approximately 10 hours for the FOIA Specialist and 5 hours for the FOIA Officer." (**Exhibit 3**). RAPC timely paid this requested amount.

34. Next, on June 20, 2019, the USPTO sent a letter claiming that "In accordance with 37 C.F.R. § 102.6(c), the response time limit is hereby extended ten additional working days to July 14, 2019 due to unusual circumstances." The only explanation provided was that "This extension is necessary because of the need to appropriately examine a voluminous amount of records that are subject to the request. The Agency's response will promptly follow its review and final assembly of responsive documents. No additional extensions are anticipated, and records will be released before July 14, 2019 if possible." (**Exhibit 4**).

35. Then, only four days later, a second letter was mailed on June 24, 2019 stating that "The USPTO has identified voluminous documents that are responsive to your request. Of those documents, nineteen pages are released in full and are included herein. The remaining documents were withheld in full pursuant to Exemption (b)(6) of the FOIA." (**Exhibit 5**) In an ever shifting narrative, June 24, 2019 was the first time the USPTO denied the FOIA request based on Exemption (b)(6) on the basis that they are Sapp's (and some others') personnel, medical, and similar files, the disclosure of which would invade personal privacy. The only documents produced among the nineteen pages were virtually identical to the Final Order against Sapp providing probation but in draft form signed just a day or two before the Final Order of May 15, 2019 (compare **Exhibit 5** with the Final Order in **Exhibit 6**).

36. The explanation provided by the USPTO for withholding substantially responsive documents was "*Here, the records contained in discipline file D2019-31 and investigatory record for Investigation G3493 is information that applies to particular individuals, and in*

*which those individuals have a legitimate privacy interest. The burden is on the requester to establish that disclosure of this information would serve the public interest.*" (**Exhibit 5**). The letter provided an opportunity for RAPC to appeal the initial decision to the Deputy General Counsel of the USPTO. The letter also suggested that RAPC contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to see mediation.

37. Plaintiff filed a request for mediation with OGIS on the same day of June 24, 2019. (**Exhibit 7**). In addition, on the very same day, RAPC filed a formal appeal providing additional explanation as to why the disclosure would serve the public interest. (**Exhibit 8**). Specifically, Plaintiff described that one of the most popular IP Blogs, the PatentlyO blog recently wrote an article on the issues of the requested documents related to Sapp, and strong public interest to ensure that an agency of the federal government properly trained its employees and trademark examining attorneys with proper signature rules on trademark applications before they enter private practice.

38. In the appeal, RAPC did not argue that the information withheld do not qualify as personnel, medical or similar files, or the disclosure of them will not invade on Heather's privacy. Instead, RAPC was misled by USPTO's letter and argued that the privacy interests are outweighed by public interest. With respect to privacy, all privacy rights are inapplicable at least because :

a. RAPC already has Sapp's personnel files because she was a previous employee. Disclosing her personnel files to RAPC is not an "unwarranted invasion" of Sapp's privacy.

b. "Similar files" was expanded by the Supreme Court to include place of birth, date of birth, date of marriage, employment history, passport information, and detailed government records of that individual. 456 U.S. 595. However, to the extent that these information exist in the withheld documents, RAPC already has this information. Moreover, USPTO can easily redact this information if they want to.

c.  To the extent USPTO categorizes Sapp's prior involvement in impermissible signature as personnel or similar files, first, they do not qualify as personnel or similar files. Second, the worst of these facts have been published in the final order. Facts revealed during RFI or investigation cannot be more invasive to Sapp's privacy than the fact that Sapp's privacy has already been revealed in the Public Order.

d.  If USPTO requires certain personnel or "similar files" be withheld based on (b)(6), it should produce the documents with the information redacted and clearly identify the reason why each redaction is warranted. USPTO cannot categorically withhold all records in Sapp's discipline file and investigation file and mark them all as "personnel or similar files", or claim exemption based on invasion of privacy on all documents regardless of the nature of each document.

39.  On June 26, 2019, the USPTO sent a letter acknowledging the appeal and provided a reference number of FOIA Appeal No. A-19-00006. (**Exhibit 9**). The letter advised that "*The Agency expects to send its response to this appeal no later than Wednesday, July 24, 2019. You will be notified if it appears that additional time is required.*" No timely response was received by July 24, 2019 and there was no additional notification received that additional time might be required. Almost one week past the deadline, on July 30, 2019, the USPTO's Deputy General Counsel for General Law dated a letter remanding only a breakdown of all searches performed and communications regarding those searches. (**Exhibit 10**, Exhibit 11 pg. 6, second paragraph). All substantive responsive documents were denied on privacy grounds (**Exhibit 11**). The final decision stated that "*This is the final decision of the United States Patent and Trademark Office with respect to your appeal. You have the right to seek judicial review of this decision as provided in 5 U.S.C. § 552(a)(4)(B). Judicial review is available in the United States District Court for the district in which you reside or have a principal place of business, the United States District Court for the Eastern District of Virginia, or the United States District Court for the District of Columbia.*" (**Exhibit 11**).

## THE USPTO HAS ADMITTED THAT NO PRIVACY PROTECTION APPLIES

40. On September 17, 2019, the USPTO's Office of the Solicitor contradicted the position taken by the FOIA department of the USPTO by exposing, without a protective order some (but not all) of the documents it has withheld and as requested through the FOIA petition referenced in this Complaint to a third party (a practitioner charged with an ethics complaint filed before an Administrative Law Judge at HUD) in Proceeding D2019-42. An index of an exhibit to which the disclosed documents were attached and which was provided by the USPTO to the third party is attached in redacted form as **Exhibit 12**. Tellingly, the USPTO did not even mark these disclosures as confidential, much less highly confidential. Among the disclosures provided to the third party in **Exhibit 12** include the following documents which are a subset of those documents requested by way of this Complaint:

| Govt. No. | Date | Description | Bates No. |
|---|---|---|---|
| 30 | 10/23/18 | Sapp response to RFI | 1-18 |
| 31 | 3/5/19 | Memo from Sarah Franz, OED, re interview with Heather Sapp on February 22, 2019 | 1-38 |
| 32 | 1/31/19 | Sapp response to supplemental RFI | 1-53 |
| 33 | 3/5/19 | Sapp Amended Responses to RFls. | 1-34 |
| 120 | 2/1/19 | Memo to File from Howie Reitz, OED, re telephone call with John Salcido | 1-13 |

Therefore, the USPTO's remaining objection with respect to why these documents should enjoy any kind of protection on the basis of privacy is without any basis and illogical.

**FIRST CAUSE OF ACTION**

(FOIA – Failure to Conduct an Adequate Search for Records)

41. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff has exhausted all administrative remedies with respect to this FOIA request.

42. Plaintiff has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(C), to an adequate search for the records it requested and to the release of any non-exempt records identified in that adequate search. No legal basis exists for the USPTO's failure to search adequately for the records Plaintiff seeks.

### SECOND CAUSE OF ACTION

(FOIA – Failure to Disclose Responsive Records)

43. Pursuant to 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff has exhausted all administrative remedies with respect to this FOIA request.

44. Plaintiff has a statutory right under FOIA, 5 U.S.C. § 552(a)(3)(A), to the records it requested, and there is no legal basis for the USPTO's failure to disclose the unproduced records in full and the portions of produced records that were withheld under exemption 5.

45. FOIA also requires agencies to release "[a]ny reasonably segregable portion of a record," 5 U.S.C. § 552(b), and the USPTO has not fulfilled its segregability obligation.

### CLAIM FOR RELIEF

46.  Plaintiff repeats and realleges each of the foregoing allegations as if fully set forth herein.

47. Plaintiff has a legal right under FOIA to obtain the specific agency records sought in the Requests, and Defendant's failure to promptly make the requested records available to Plaintiff has no legal basis.

48. Defendant's failure to determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after receipt whether to comply with the Request directed to it violates FOIA, 5 USC § 552(a)(6)(A)(i), and applicable regulations promulgated thereunder.

49. Defendant's failure to conduct a reasonable search for the records responsive to the Requests and to promptly make them available violates FOIA, 5 U.S.C. § 552(a)(3), and applicable regulations promulgated thereunder.

50. The failure of Defendant to process as soon as practicable the Requests, which were granted expedited processing, violates FOIA, 5 U.S.C. § 552(a)(6)(E)(iii) and applicable regulations promulgated thereunder.

51. This delay is unreasonable in light of the fact that the records Plaintiff is requesting are possessed by the USPTO and readily accessible by the USPTO.

52. Plaintiff is unable to obtain the requested records directly from alternate sources because the requested materials are in the sole custody of the USPTO.

53. The USPTO's disregard of its duty to release the documents requested has harmed and will continue to harm Plaintiff until the USPTO is compelled to comply with FOIA.

54. On information and belief, Defendant currently has possession, custody or control of the requested records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

1.  Enjoin the USPTO from withholding the requested documents;

2.  Declare that the USPTO violated FOIA by unlawfully withholding the requested records;

3.  Order that the USPTO to undertake an additional search for responsive records;

4.  Order the USPTO to conduct a reasonable search for the requested records and to disclose them to Plaintiff in their entireties and on an expedited basis;

5.  Order the USPTO to make the requested records available to Plaintiff at no cost and without delay;

6.  Order the USPTO to stay any and all RFIs and any and all Complaints filed before an Administrative Law Judge (ALJ) alleging violations of 37 C.F.R. §11.18;

7.  Order that the USPTO's rule 37 C.F.R. §11.18 in unconstitutional when applied to attorney's approving documents and expressly asking their legal assistants to sign and file their electronic signature on documents filed before the USPTO;

8.  Award Plaintiff costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E);

9.  Retain jurisdiction to ensure compliance with the Court's decree; and

10. Grant other such relief as the Court may deem just and proper.

1

Respectfully submitted this Monday, September 23, 2019.

2

3                                              LEGALFORCE RAPC WORLDWIDE P.C.

4

5                                              /s/ Raj V. Abhyanker_____

6                                              Raj V. Abhyanker
                                               Attorneys for Plaintiff:
7                                              LegalForce RAPC Worldwide, P.C.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>BENCH TRIAL REQUESTED</u>

Plaintiff hereby requests a bench trial for the declaratory relief alleged in this Complaint.

Respectfully submitted this Monday September 23, 2019.

LEGALFORCE RAPC WORLDWIDE P.C.

By___/s/ Raj V. Abhyanker_____
Raj V. Abhyanker
Attorneys for Plaintiff:
LegalForce RAPC Worldwide, P.C.