UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LEGALFORCE RAPC WORLDWIDE P.C.,

    Plaintiff,

v.

UNITED STATES PATENT & TRADEMARK OFFICE,

    Defendant.

No. C 19-05935 WHA

**ORDER GRANTING SUMMARY JUDGMENT**

**INTRODUCTION**

In this Freedom of Information Act case, defendant agency moves for summary judgment. The *Vaughn* index does not adequately justify certain applications of Exemption 5, but plaintiff does not challenge the adequacy of the agency's search or its application of Exemptions 6 and 7. No genuine dispute of the agency's withholding remaining, summary judgment is **GRANTED**.

**STATEMENT**

In May 2019, plaintiff LegalForce RAPC Worldwide P.C. filed FOIA request F-19-00197 with defendant United States Patent and Trademark Office ("PTO") seeking records from an investigation into one of plaintiff's attorneys, Heather Sapp. In 2018, the PTO's Office of Enrollment and Discipline (OED) (which oversees practitioner (mis)conduct) investigated Ms. Sapp, also a former PTO attorney, for possible violations of the PTO's document signing and submission rules. The investigation, No. G3493, concluded with a settlement and public

reprimand, approved in the final order of *In the Matter of Heather A. Sapp*, Proceeding No. D2019-31 (Choe Decl., Dkt. No. 23-1, at ¶¶ 5, 15–17).

Following the settlement, plaintiff requested four categories of documents, which the PTO interpreted as follows:

| Plaintiff's Actual Request | PTO Interpretation |
|---|---|
| 1. Any and all Request[s] for Information (RFI's) sent by the USPTO Office of Enrollment and Discipline to Heather A. Sapp or her counsel . . . . | 1. [A]ll RFI's that OED transmitted to Heather A. Sapp in connection with her disciplinary proceeding. |
| 2. Any and all responses submitted by Heather A. Sapp either directly or through counsel . . . . | 2. [A]ny response submitted by Heather A. Sapp or her counsel on any subject related to the investigation . . . . |
| 3. Any and all notes from interviews conducted in person with Heather A. Sapp and/or her attorney that are not governed under any settlement privilege . . . . | 3. [A]ny documents related to the Agency's preparation for the interview and any notes or memoranda generated post-interview. |
| 4. Any and all declarations, affidavits, or statements of facts received or taken by OED from Heather A. Sapp . . . leading to the Final Order . . . . | 4. [D]raft and final versions of the Proposed Settlement Agreement and Final Order, and any substantive communications discussing the contents of those documents. |

In response, the PTO's FOIA Office turned to the OED, who identified six employees likely to have relevant documents. In June 2019, the PTO released 31 pages of documents to plaintiff (Choe Decl. at ¶¶ 5, 8, 18–19, 21–24).

Dissatisfied, plaintiff filed this suit and suggested that "there were disagreements in the USPTO about whether to release records." So, in January 2020, the PTO searched again in three places. In the Office of the Solicitor, which advises OED, the PTO identified as relevant and searched the files of former Associate Solicitor Elizabeth Mendel, employing relevant search terms, including "Heather," "Sapp," "G3493," and "D2019-31." It then searched the Office of General Law, which approved Ms. Sapp's settlement, for documents regarding that settlement, using relevant search terms such as her name and proceeding number. Finally, it searched the files of the OED's director, William Covey, again for Ms. Sapp's name and file numbers. The PTO also searched Mr. Covey's files for plaintiff's counsel's name, Mr. Abhyanker (*id.* at ¶¶ 25–28).

2

The PTO's initial search recovered 3,109 pages of which 31 were released in full and 3,078 were withheld in full. The supplemental search revealed 170 new pages, of which 83 pages were released in full, 12 in part, and 75 withheld in full. Additionally, the PTO reconsidered some of the initially withheld 3,078 pages, releasing 143 pages in full and 575 pages in part. Simply, the original search yielded 3,109 relevant pages of the 3,279 relevant pages eventually found (*id.* at ¶ 29; Choe Suppl. Decl., Dkt. No. 25-1, at ¶¶ 3–4; Choe Sec. Suppl. Decl., Dkt. No. 29, at ¶¶ 3–6). The table below summarizes the productions:

|  | **June 2019** | **January 2020** | **Final *Vaughn* Index** |
|---|---|---|---|
| *Released in any form* | 31 | 813 | 844 |
| Released in Full | 31 | 226 | 257 |
| Released in Part | 0 | 587 | 587 |
| Withheld in Full | 3,078 | 2,435 | 2,435 |
| *Withheld in any form* | 2935 | 3022 | 3,022 |
| **Totals** | **3,109** | **3,248** | **3,279** |

In sum, the PTO withheld in some part 3,022 pages of documents under FOIA Exemptions 5, 6, and 7. Its *Vaughn* index, filed on February 27 along with a motion for summary judgment, asserts the exemptions over 469 documents. The index notes authors and addressees of each document, the title and subject, the specific statutory exemption, and one or several of six categories for withholding under the specified exemptions. The index also includes a key for the categories of withholding and a list of relevant staff and attorneys in OED, the Office of General Law, and the Office of the Solicitor (Dkt. No. 23-2 at 115–200; Dkt. No. 25 fn. 1). Due to the COVID-19 pandemic, this order follows full briefing and a telephonic hearing. It also follows *in camera* review of four specifically challenged documents.

**ANALYSIS**

FOIA lets us see what our government is up to by "provid[ing] public access to official information 'shielded unnecessarily' from public view and establish[ing] a 'judicially enforceable public right to secure such information from possibly unwilling official hands.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). It "mandates a policy of broad disclosure of government documents." *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d

3

738, 741 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). Here, plaintiff complains only that: (1) the PTO provided an insufficient *Vaughn* index; (2) it improperly withheld several documents under Exemption 5; and (3) two non-attorneys referenced in the index undermine the claimed Exemptions. Notably, plaintiff does not challenge the adequacy of the PTO's search, nor does it challenge the PTO's application of Exemptions 6 and 7.

### 1.  ADEQUACY OF THE *VAUGHN* INDEX.

Plaintiff rates the PTO's *Vaughn* index as inadequate for two reasons. The first misunderstands the record and the second fails to convince.

*First*, plaintiff contends the *Vaughn* index does not include, and thus cannot justify, the withholding of documents from the PTO's initial production (Dkt. No. 24 at 3–5). This is factually incorrect, though plaintiff's misunderstanding may be excused due to the PTO's piecemeal explanation. The PTO's initial search returned 3,109 relevant pages, 31 which were produced in full and 3,078 which were withheld in full. The supplemental search revealed 170 new pages of material. Ultimately, the two PTO searches revealed 3,279 relevant pages, 257 which were released in full, 587 in part, and 2,435 withheld in full. Thus, the complete *Vaughn* index reports the bases for withholding 3,022 pages (Choe Decl. at ¶ 29; Choe Supp. Decl. at ¶¶ 3–4; Choe Sec. Suppl. Decl. at ¶¶ 3–6).

*Second*, plaintiff appears to challenge as insufficient the index's categories of bases for exemption (Dkt. No. 24 at 5–6). A *Vaughn* index must "identify[] each document withheld, the statutory exemption claimed, and [provide a] particularized explanation of how disclosure of the particular document would damage the interest protected by the claimed exemption." The index should "afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." Simply, the index should level the FOIA playing field for the requester and "permit more effective judicial review of the agency's decision." *Wiener v. F.B.I.*, 943 F.2d 972, 977–78 (9th Cir. 1991).

This order finds the *Vaughn* index generally sufficient for the review sought. As seen below, the index offers enough information to effectively evaluate plaintiff's objections — with

one exception. But the exception aside, plaintiff does not explain how the index's employment of various categories of withholding undermines review. Each individual document entry in the *Vaughn* index describes the document type, source or author, addressee or destination, title, subject, date, and whether withheld in full or redacted in part. Plaintiff's "generic categories" of withholding are conclusions, applicable to groups of documents, based upon individual descriptions. The people drafting and reading, and the contents and purpose of, the document constitutes the key information this order uses to evaluate whether the document was appropriately withheld.

Plaintiff's only specific challenge is that documents should not be jointly classified under withholding categories A and B (Dkt. No. 24 at 6). But the categories are not mutually exclusive. Category A applies to predecisional and deliberative drafts and documents, where category B applies to predecisional and deliberative documents — *not* drafts. Both address predecisional and deliberative documents, but category B is narrower because it does not include communications, such as final memoranda and emails, which are not drafts. Plaintiff may be excused for misunderstanding, as the PTO itself injected the ambiguity by defining the term "document" to include "emails [and] letters" in both categories before clarifying the distinction upon reply (Dkt. No. 23-2 at 197; Choe Supp. Decl. at ¶ 20). But a *Vaughn* index need not be elegant, it need only aid effective review. Plaintiff does not explain how these two categories undermine effective review of the PTO's application of the exemptions. Thus, this order proceeds to evaluate plaintiff's specific challenges to the PTO's withholding.

### 2. WORK-PRODUCT CHALLENGES.

Plaintiff challenges the PTO's bases for withholding four documents as protected attorney work-product under Exemption 5. "When a request is made, an agency may withhold a document, or portions thereof, only if the material at issue falls within one of the nine statutory exemptions found in § 552(b)." "These exemptions are explicitly exclusive and must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997) (citations and quotations omitted). "FOIA's strong presumption in favor of disclosure places

the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015).

Exemption 5 protects from disclosure "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Information may be withheld if (1) its source is a government agency, and (2) it "fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "This exemption has been interpreted as coextensive with all civil discovery privileges." *Sierra Club v. United States Fish & Wildlife Serv.*, 925 F.3d 1000, 1011 (9th Cir. 2019). "These include records that would be protected in litigation by the attorney work-product, attorney-client, and deliberative process privileges." *ACLU Nor. Cal. v. United States Dep't of Just.*, 880 F.3d 473, 483 (9th Cir. 2018). But to be clear, "Exemption 5 shields those documents, and only those documents, normally privileged in the civil discovery context." *Lahr*, 569 F.3d at 979 (quotation omitted).

"The attorney work-product privilege protects from discovery in litigation mental impressions, conclusions, opinions, or legal theories of a party's attorney that were prepared in anticipation of litigation or for trial." Simply, it permits "attorneys to prepare their thoughts and impressions about a case freely and without reservation." To qualify for protection, "documents must: (1) be prepared in anticipation of litigation or for trial and (2) be prepared by or for another party or by or for that other party's representative." *ACLU Nor. Cal.*, 880 F.3d at 483–84 (quotations omitted). As above, plaintiff challenges four work-product designations.

*First*, plaintiff objects to the designation of documents 415, 420, and 461, described as draft interview outlines and notes attached to emails, but without specified authors (Dkt. No. 24 at 6). Plaintiff's objection to document 415 appears a typographical error, as document 415 is an email chain between Ms. Franz, other OED attorneys Howard Reitz, Ronald Jaicks, Elizabeth Dorsey, and OED paralegal Hannah Robinson discussing Ms. Sapp's interview. Plaintiff's parallel reference to Bates numbers 2611–2620 confirm the actual target of the

6

objection is document 418 which, like documents 420 and 461, is an email attachment without an author specified (Dkt. No. 23-2 at 186–87).

This objection, though, is unfounded. Email attachments in the index correspond to the email immediately preceding (Choe Supp. Decl. at ¶¶ 10–11, 13). So, the supposedly unauthored documents 418, 420, and 461, each described as "[d]raft outline and notes used for interview with Heather Sapp" are attachments to email documents 417, 419, and 460. OED attorney Jaicks authored and sent documents 417 and 419 to OED attorneys Franz and Reitz. And attorney Jaicks also authored and sent document 460 to Office of the Solicitor attorneys Elizabeth Mendel and Melinda DeAtley. Thus, OED attorneys authored the interview outlines to further their investigation of Ms. Sapp and circulated them for internal OED attorney review, or for advice and review by the Office of the Solicitor (*id.* at 186–87, 195, 200; Dkt. No. 23-1 at ¶ 36). Plaintiff's objection does not undermine the conclusion that the PTO correctly identified these documents as, at least, attorney work-product.

Nonetheless, the undersigned took the documents for *in camera review*, confirming the above. Documents 418, 420, and 461 are iterations of an outline for the OED's interview of Ms. Sapp, part of the agency's disciplinary investigation. They lay out the interview format, subject matter, and even the specific language of questions to ask. They are, undoubtedly, attorney work-product. And because the documents are agency (the PTO's) work-product, they fall within Exemption 5. *See Klamath*, 532 U.S. at 8.

*Second*, plaintiff challenges the designation of document 397, contending its thirty pages of emails, memos, and communication were withheld "without any indication of who the authors [were]" (Dkt. No. 24 at 6). But, as above, the description "Attachment: Exhibits" means document 397 is the batch of exhibits attached to document 396, "Memorandum with attachment" (Choe Supp. Decl. at ¶ 7). OED staff attorney Sarah Franz authored the memorandum (document 396) to memorialize the PTO's interview of Ms. Sapp for the file — paradigm work-product. And, the PTO concludes, because the exhibits to the memo reflect Ms. Franz's impressions and evaluation of the interview, their attachment constitutes work-product (Dkt. No. 23-2 at 183, 200).

7

But a document, otherwise discoverable, does not become undiscoverable merely because an attorney has reviewed it. *See Our Children's Earth Found. v. Nat'l Mar. Fish. Serv.*, 85 F. Supp. 3d 1074, 1088 (N.D. Cal. 2015) (citing *O'Connor v. Boeing N. Am.*, 185 F.R.D. 272, 280 (C.D. Cal. 1999)). Here, the *Vaughn* index's failure to describe the underlying exhibits themselves prevents effective review of the PTO's withholding. From the index alone, it remains unclear whether the underlying exhibits are complete documents or whether they are annotated or excerpted, thus representing attorney impressions. Nor does the index adequately describe the document subjects. And, because Exemption 5 applies, generally, only to intra-agency or interagency documents, failure to specify document authors and addressees may undermine the withholding.

Unsurprisingly, *in camera* review reveals Exemption 5 does not protect document 397. Recall, the exemption covers *agency generated* documents — it doesn't cover non-agency authored documents. *See Klamath*, 532 U.S. at 8. Document 397 contains no agency generated material. Instead, it contains email threads between Ms. Sapp and Mr. Abhyanker — plaintiff's own email records — and a memorandum from outside ethics counsel.

It is true that an attorney's curation of exhibits, *i.e.*, annotations and excerpts of documents, might be work-product. *See ACLU Nor. Cal.*, 880 F.3d at 483–84. For example, the memorandum from outside ethics counsel does just that — it includes snippets of Ms. Sapp's instant message communications nested within counsel's analysis. It does not appear that the PTO's attorneys similarly curated the pages of document 397, which instead seems to include entire emails or email chains and the entire ethics memorandum. There may be work product in document 397, but it's not the PTO's, so Exemption 5 doesn't apply.

But the PTO also asserts Ms. Sapp holds a legitimate privacy interest in the circumstances of the OED's investigation into her conduct. Thus, it rates disclosure of document 397 both as a clearly unwarranted invasion of Ms. Sapp's personal privacy generally and an unwarranted invasion of her personal privacy interest in law enforcement documents involving her (Dkt. No. 23 at 20–25). Despite the fair opportunity to challenge these grounds in its opposition brief, plaintiff did not (Dkt. No. 24). No public interest articulated to overcome Ms. Sapp's privacy

8

interest, document 397 was appropriately withheld under Exemptions 6 and 7(C). *See Lahr*, 569 F.3d at 973–74.

### 3. NON-ATTORNEYS REFERENCED IN *VAUGHN* INDEX.

Plaintiff finally objects to two individuals referenced in the *Vaughn* index who it contends are not attorneys. Both represent misunderstandings that do not undermine the PTO's application of exemptions.

*First,* plaintiff contends that Robert Walker, "Administrative Management Special," is identified in the index's list of attorneys and staff, but he is nowhere identified along with a withheld document. Thus, "without clarifying what documents he authored it is impossible to determine" whether the claimed exemptions apply (Dkt. No. 24 at 6). Plaintiff does not, however, identify any documents in the *Vaughn* index to which this concern might apply. Regardless, the PTO explains there are none. Mr. Walker is referenced as Office of General Law staff, but all documents containing his name *were* in-fact released in full to plaintiff (Choe Suppl. Decl. at ¶ 21). So, this misunderstanding does not undermine any withholdings.

*Second*, plaintiff notes that documents 165, 172, 203, and 347 reference "Timothy Rooney," an individual unidentified in the original *Vaughn* index list of staff and attorneys. The PTO withheld each document under Exemption 5 (Dkt. No. 24 at 6–7). But as plaintiff rightly notes, Exemption 5 generally protects only "interagency or intra-agency" documents — the presence of an outsider could undermine application of the exemption. *See* 5 U.S.C. § 552(b)(5). The PTO clarified in reply, however, that Mr. Rooney is an OED attorney "inadvertently omitted from the List of USPTO Attorneys and Staff" in the *Vaughn* index (Choe Suppl. Decl. at ¶ 22). So, his involvement in four iterations of drafting Ms. Sapp's settlement agreement does not undermine the PTO's withholding under Exemption 5.

## CONCLUSION

No genuine disputes remain. The PTO's search was adequate. Most documents were properly withheld under Exemption 5. One document was not, but plaintiff does not challenge the withholding under Exemptions 6 and 7. Because plaintiff's remaining objections to the

PTO's withholding are soundly addressed, summary judgment is appropriate. Thus, the PTO's motion is **GRANTED**.

It bears stating, however, that though the several misunderstandings noted above did not undermine the PTO's application of exemptions, they illustrate the necessity of comprehensive and accurate *Vaughn* indices. Government agencies enjoy an unusually powerful position in FOIA cases, where the facts, the documents, and the reasons for withholding begin (and often stay) completely within the agency's control. "This lack of knowledge by the party seeking disclosure seriously distorts the traditional adversary nature of our legal system[]." *See Wiener*, 943 F.2d at 977 (citing *Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973)). Recall, among other things, FOIA affords private citizens the ability to hold the government *to its own rules*. *See Oregon Nat'l Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir. 2009). Errors, inadvertent to the government, are often more serious for a plaintiff. Next time, the PTO and counsel would do well to review submissions once more.

**IT IS SO ORDERED.**

Dated: April 16, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE